# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SQUARE ENTERPRISES CORP.,** | **MASTER FILE: 06-CV-3270** |
| **Plaintiff,** | **(WJM)** |
| **v.** | |
| **AGROS NOVA SP. Z.O.O.,** | **OPINION** |
| **Defendant.** | **HON. WILLIAM J. MARTINI** |

Ludomir A. Budzyn
Hoffmann & Baron, LLP
1055 Parsippany Boulevard
Parsippany, NJ 07054

Jon Anthony Chiodo
Hoffmann & Baron
6 Campus Drive
Parsippany, NJ 07054

(*Counsel for Plaintiff*)

Lawrence F. Carnevale
Carter, Ledyard & Milburn, LLP
2 Wall Street
New York, NY 10005

(*Counsel for Defendant*)

1

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Agros Nova Sp. z.o.o.'s ("Agros") motion to dismiss or stay Square Enterprises Corp.'s ("Square") claims pending arbitration.  Square's claims arise from Agros's alleged breach of a contract with Square.  Agros now argues that a provision in this contract requiring arbitration of all claims "arising under" the contract applies to Square's claims and that Square must thus submit these claims to arbitration.  In light of the breadth of the contract's arbitration provision and the strong federal policy favoring arbitration, this Court agrees.  Accordingly, Agros's motion is **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**.

## FACTS AND PROCEEDINGS

This case arises out of a broken fruit juice distribution contract.  Agros, a Polish fruit juice manufacturer, entered into a contract with Square, a fruit juice distributor, under which Square was to be the exclusive distributor of Agros's juice in the United States.  (Am. Compl. ¶¶ 7, 8, 9.)  This contract contained an arbitration clause, which stated as follows: "Any disputes arising under this Agreement shall be settled by the Arbitration Court of the National Chamber of Commerce in Warsaw."  (Def.'s Mot. to Dismiss Ex. E 6.)

According to the pleadings, Agros failed to abide by this contract.  Square alleges that after the parties entered the contract, Agros hired other companies to distribute its juice in the United States without Square's consent.  (Am. Compl. ¶ 11.)  Furthermore, the juice that Agros had hired other companies to distribute was labeled with Square's name, misleadingly suggesting that Square was the importer and distributor of the juice.  (Am. Compl. ¶ 14.)  Agros eventually terminated the contract but continued to distribute the mislabled juices without Square.  (Am.

Compl. ¶ 13; Mem. Supp. Pl.'s Opp. to Def.'s Mot. 7.)

In response, Square filed this suit.  Square alleges that Agros's actions constitute violations of trademark laws, common law service mark laws, and unfair competition laws.  (Am Compl. ¶¶ 17–30.)  The general nature of Square's complaint is that Agros distributed juice labeled with Square's marks, misleading purchasers into believing that Square was the importer and distributor.  Importantly, Square does not assert a claim for breach of contract and does not complain about Agros's distribution of its juices without Square.

Agros now moves to dismiss or stay Square's claims pending arbitration.

## DISCUSSION

Whether claims must be arbitrated under an arbitration provision of a contract depends ultimately upon whether the contracting parties so intended.  *See Nursing Home Union No. 434 ex rel. Mackson  v. Sky Vue Terrace, Inc.*, 759 F.2d 1094, 1097 (3d Cir. 1985).  That is, arbitrability is "a matter to be determined by the Court on the basis of the contract entered into by the parties."  *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241 (1962).

Although this question is essentially one of contract interpretation, there is a strong federal policy in favor of arbitration that weights the scale heavily in favor of interpreting arbitration clauses expansively.  *Sky Vue*, 759 F.2d at 1097.  This policy applies with particular force where international commerce is involved.  *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001).  Any doubts regarding the parties' intentions must be resolved in favor of arbitration.  *First Liberty Inv. Group v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998).  Indeed, an order to arbitrate a claim should not be denied "unless it may be said with positive assurance that the arbitration clause is

3

not susceptible of an interpretation that covers the asserted dispute." *Sky Vue*, 759 F.2d at 1097

(quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

Particularly expansive interpretations will be given to arbitration provisions if they

subject claims to arbitration using broad phrases such as "arising under." *Battaglia v. McKendry*,

233 F.3d 720, 727 (3d Cir. 2000). Such phrases are generally construed to encompass claims

beyond breach of the contract itself. *See, e.g.*, *Scherk v. Alberto-Culver Co.*, 417 U.S. 506

(1974). Where a party seeks to invoke a contract's broad arbitration provision for a claim other

than breach of the contract itself, courts should focus on the factual underpinnings of the claim,

rather than the legal theory alleged in the complaint. *Medtronic AVE, Inc. v. Advanced

Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001).

Relying on these and other cases, Agros argues that Square's claims arise under the

contract because their factual underpinnings are connected to the contract. (Mem. Supp. Pl.'s

Mot. to Dismiss 10–11.) Square answers that its claims did not arise under the contract, focusing

myopically on the facts that support its claims and ignoring how those facts relate to the contract.

(Def.'s Mem. 11–14.) Square alternatively argues that its claims based on events occurring after

Agros terminated the contract could not have arisen under the contract since at that point the

contract no longer existed. (Def.'s Mem. 9–11.)

Agros's analysis is correct. As explained above, the crucial question is whether the

factual underpinnings of Square's claims are connected to the contract. *Id.* They are. But for the

parties' contractual arrangement, Agros would not have misused Square's marks. Also, Square's

claims arose only because Agros distributed its juices without Square—precisely the distribution

prohibited by the contract. These factual connections are sufficient to subject Square's claims to

4

the contract's broad arbitration provision.[1]

For the same reason, Square's alternative argument—that its claims based on events occurring after Agros terminated the contract are not subject to the contract's arbitration provision—is also without merit.  If claims are otherwise subject to a contract's arbitration provision, it is irrelevant that those claims arose after the contract has been terminated.  *Nolde Bros. v. Local No. 358, Bakery Workers Union*, 430 U.S. 243, 252–54 (1977).

**<u>CONCLUSION</u>**

Because all of Square's claims arise out of its contract with Agros and are thus subject to the contract's arbitration provision, this action is **DISMISSED WITHOUT PREJUDICE**.  *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 600 (3d Cir. 2002).  An appropriate Order accompanies this Opinion.

s/ William J. Martini
William J. Martini, U.S.D.J.

---

[1]Of course, measuring the factual proximity of Square's claims to the contract is a subjective and somewhat fictitious task.  Nevertheless, these claims feel closely related to the contract, and this Court must resolve any doubts in favor of arbitration.  *First Liberty*, 145 F.3d at 653.